No. 22-15077

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

IN RE FACEBOOK, INC. SECURITIES LITIGATION

AMALGAMATED BANK, LEAD PLAINTIFF; PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI; JAMES KACOURIS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants*,

*v.*

FACEBOOK, INC.; MARK ZUCKERBERG; SHERYL SANDBERG; DAVID M. WEHNER,

*Defendants-Appellees*.

On Appeal from the United States District Court for the
Northern District of California (Hon. Edward J. Davila), No. 5:18-cv-01725-EJD

## APPELLEES' MOTION TO STAY ISSUANCE OF THE MANDATE

Brian M. Lutz  
Michael J. Kahn  
GIBSON, DUNN & CRUTCHER LLP  
555 Mission Street, Suite 3000  
San Francisco, CA 94105  
(415) 393-8200  
BLutz@gibsondunn.com  

Joshua S. Lipshutz  
Katherine Moran Meeks  
Trenton Van Oss  
GIBSON, DUNN & CRUTCHER LLP  
1050 Connecticut Avenue, N.W.  
Washington, D.C. 20036  
(202) 955-8500  
JLipshutz@gibsondunn.com  

*Attorneys for Defendants-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel of record certifies that Defendant-Appellee Facebook, Inc., now known as Meta Platforms, Inc., is a publicly traded corporation and has no parent corporation, and there is no publicly held corporation that owns 10% or more of its stock.

## TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ..................................................... i
INTRODUCTION ...................................................................................................1
BACKGROUND .....................................................................................................2
ARGUMENT ...........................................................................................................6
    I.    Facebook's Petition Will Present Substantial Questions. .....................7
    II.   There Is Good Cause to Stay Issuance of the Mandate. .....................11
CONCLUSION ......................................................................................................12
CERTIFICATE OF SERVICE .............................................................................14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) .................................................................... 5, 8

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ................................................................................ 10

*Bondali v. Yum! Brands, Inc.*,
  620 F. App'x 483 (6th Cir. 2015) ............................................................. 8

*Brown v. Wal-Mart Stores, Inc.*,
  2012 WL 5818300 (N.D. Cal. Nov. 15, 2012) ....................................... 11

*Bryant v. Ford Motor Co.*,
  886 F.2d 1526 (9th Cir. 1989) .................................................................. 7

*In re Daou Sys., Inc., Sec. Litig.*,
  411 F.3d 1006 (9th Cir. 2005) .................................................................. 9

*Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*,
  45 F.4th 1236 (10th Cir. 2022) ................................................................ 8

*Karth v. Keryx Biopharmaceuticals, Inc.*,
  6 F.4th 123 (1st Cir. 2021) ...................................................................... 8

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) .............................................................. 9, 10

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) .................................................................. 10

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp.*,
  774 F.3d 598 (9th Cir. 2014) .................................................................... 9

*United States v. Pete*,
  525 F.3d 844 (9th Cir. 2008) .................................................................... 7

*Williams v. Globus Med., Inc.*,
  869 F.3d 235 (3d Cir. 2017) ..................................................................... 9

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

**RULES**

9th Cir. R. 41-1 ................................................................................................7, 11

Fed. R. App. P. 41(d)(1) ...............................................................................1, 6, 11

Fed. R. App. P. 41(b) ..............................................................................................6

Fed. R. App. P. 41(d) .............................................................................................1

Sup. Ct. R. 10(a) ....................................................................................................7

## INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 41(d)(1) and Circuit Rule 41-1, Defendants-Appellees (collectively, "Facebook") respectfully move this Court to stay issuance of the mandate pending the filing and disposition of a petition for a writ of certiorari in the United States Supreme Court.[1] A stay is warranted because Facebook's anticipated petition will raise substantial legal questions. Fed. R. App. P. 41(d). *First*, over a dissent, the panel's decision deepens a circuit split regarding what must be included in companies' "risk-disclosure" statements. *Second*, the panel's acceptance of plaintiffs' novel loss-causation theory conflicts with Supreme Court precedent and exacerbates a circuit split concerning the appropriate pleading standard.

There is also good cause to stay the mandate pending disposition of Facebook's petition. Fed. R. App. P. 41(d)(1). Absent a stay, the parties and the district court will expend time and resources on litigation that would be wasted if the Supreme Court grants certiorari and reverses this Court's judgment. And a temporary stay would not prejudice plaintiffs, who will be able to pursue their claims on remand if the Supreme Court denies certiorari or affirms this Court's judgment.

---

[1] Plaintiffs-Appellants oppose this motion.

## BACKGROUND

This securities class action involves the misappropriation of Facebook user data. In December 2015, the *Guardian* revealed that a Cambridge University professor obtained Facebook users' data through a personality quiz app and sold that data to Cambridge Analytica, a political consulting firm. 1-SER-165–69; 1-ER-21; 2-ER-145. Facebook investigated, removed the app from the platform, and obtained certifications that the data had been deleted. 1-ER-21; 2-ER-285–86 (¶361); 2-ER-293–94 (¶385); 3-ER-351–52 (¶552). Facebook's stock price was unaffected when the market learned of Cambridge Analytica's data misuse. But in March 2018, Facebook and its investors learned through news reports that despite Cambridge Analytica's certification, it had retained and continued to misuse the data, and the stock price fell. 2-ER-151 (¶21); 2-ER-285–86 (¶361); 2-ER-287 (¶¶364–65); 2-SER-368–72; 2-SER-377–82; 3-ER-401–02, 409 (¶¶689–90, 707).

On June 3, 2018, additional news reports discussed a practice plaintiffs call "whitelisting," where Facebook allowed trusted device manufacturers to access user data and allowed certain apps to continue accessing friend data for certain purposes. 2-ER-272–73 (¶319); 2-ER-275–76 (¶¶327–29). Those reports did not result in any decline in Facebook's stock price. 1-ER-15; 3-ER-407 (¶703). But when Facebook announced its second-quarter earnings in July 2018—almost two months later—its stock price fell. 2-ER-305 (¶¶418–19); 2-ER-306 (¶422).

Plaintiffs brought securities-fraud claims on behalf of a purported class of investors who bought Facebook stock before the March and July 2018 drops. The district court dismissed their claims three times, and plaintiffs appealed. On appeal, plaintiffs defended only a subset of the statements they challenged below, two of which are relevant here: (1) statements that users could "control" how their data was shared; and (2) statements in Facebook's 2016 10-K warning that Facebook could suffer business or reputational loss if a security breach exposed data to improper use by third parties.

*User-control statements.* Plaintiffs challenged statements that users could "control" how Facebook shared their data. 1-ER-24–28. The district court dismissed the user-control statements because plaintiffs failed to plead facts tying the June 3, 2018 whitelisting disclosures to the drop in Facebook's stock price almost two months later on July 26, 2018. 1-ER-15. The panel majority reversed, concluding plaintiffs sufficiently alleged the user-control statements were false because Facebook "had reason to know" before March 2018 that Cambridge Analytica had not purged all the data. Am. Op. 38.[2] And it held that plaintiffs "adequately pleaded loss causation" for the March 2018 stock drop, accepting the

---

[2] The panel issued its decision on October 18, 2023, but amended it on December 4, 2023. All references to the panel's decision refer to the amended decision unless otherwise noted.

3

theory that the 2018 Cambridge Analytica news reports served as a corrective disclosure. Am. Op. 33. The majority also accepted plaintiffs' loss-causation theory for the July 2018 stock drop, holding that plaintiffs had plausibly linked it to the Cambridge Analytica and whitelisting disclosures several months earlier. Am. Op. 33–34, 37.

Judge Bumatay dissented in part. While he agreed with the panel majority in concluding that plaintiffs had sufficiently alleged loss causation as to the July 2018 stock drop, he would have affirmed the district court's holding that only the whitelisting allegations, and not the Cambridge Analytica "disclosures," sufficiently alleged the user-control statements to be false. Am. Op. 50, 52.

***Risk-disclosure statements.*** In the "Risk Factors" section of its 2016 10-K, Facebook warned that "[s]ecurity breaches and improper access to or disclosure of our data or user data, or other hacking and phishing attacks on our systems, could harm our reputation and adversely affect our business." 3-ER-341 (¶525(a)) (emphasis omitted). The district court dismissed for failure to plead falsity: "the Cambridge Analytica scandal was [not] harming Facebook's reputation, business, or competitive position" when the disclosures were made, and "Kogan's and Cambridge Analytica's misuse of Facebook user data [for the Cruz campaign] was already public knowledge." 1-ER-57–58.

4

Relying on *In re Alphabet, Inc. Securities Litigation*, 1 F.4th 687 (9th Cir. 2021), the panel majority reversed. Even though Cambridge Analytica's initial misuse of user data for the Cruz campaign had been publicly reported in 2015, and even though Facebook had no reason to suspect any present harm to its business from this years-old event, the majority held that plaintiffs adequately alleged falsity because the risk disclosure "presented the prospect of a breach as purely hypothetical when it had already occurred." Am. Op. 24; *see* Am. Op. 21–22, 25. The majority concluded "it is the fact of the breach itself, rather than the anticipation of reputational or financial harm, that caused anticipatory statements to be materially misleading." Am. Op. 25.

Judge Bumatay again dissented. He rejected the majority's "surprisingly broad view" that "it's enough that a breach had occurred, never mind whether the breach led to a discernible effect on Facebook's reputation or business at the time." Am. Op. 45. The risk disclosures, he explained, "warn[ed] about harm to Facebook's 'business' and 'reputation' that 'could' materialize based on improper access to Facebook users' data—not about the occurrence or non-occurrence of data breaches." Am. Op. 43. And he concluded "this case is nothing like *Alphabet*," where "the company knew a risk had come to fruition—set out as clear as day in an internal company memo." Am. Op. 46. Here, by contrast, "the harm from

5

Cambridge Analytica's breach of Facebook's policies was 'unknown' at the time of the 10-K filing." Am. Op. 46–47.

Facebook timely filed a petition for panel rehearing and rehearing en banc on November 1, 2023. Dkt. 50. That petition raised two main issues: (1) the panel applied the wrong pleading standard in assessing plaintiffs' novel loss-causation theory, deepening a circuit split; and (2) the panel's risk-factors analysis deepened another circuit split and imposed unworkable disclosure requirements. Although Judge Bumatay voted to grant the petition, the panel majority denied it on December 4, 2023. Am. Op. 5. The panel issued an amended opinion clarifying that Federal Rule of Civil Procedure 9(b) supplies the proper standard for pleading loss causation, but otherwise maintaining the panel's prior analysis. Am. Op. 32–33.

Facebook now respectfully requests that this Court grant a stay of its mandate pending the filing of a petition for a writ of certiorari in the Supreme Court. The mandate is scheduled to issue on December 11, 2023, but is automatically temporarily stayed pending the resolution of this motion. Fed. R. App. P. 41(b).

## ARGUMENT

Federal Rule of Appellate Procedure 41(d) provides that a court of appeals may stay its mandate pending the filing of a petition for a writ of certiorari in the Supreme Court. A stay is appropriate when the petition for certiorari "would present a substantial question and . . . there is good cause for a stay." Fed. R. App. P.

41(d)(1). "No exceptional circumstances need be shown to justify a stay." *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989). Rather, a stay may be granted so long as the petition for a writ of certiorari would neither be "frivolous" nor "filed merely for delay." 9th Cir. R. 41-1. Accordingly, it "is often the case" that "the appellate mandate [is] stayed while [a party] s[eeks] certiorari from the Supreme Court." *United States v. Pete*, 525 F.3d 844, 850 (9th Cir. 2008). Because this case presents substantial questions and there is good cause for a stay, the Court should grant Facebook's motion to stay the mandate pending a petition for certiorari.

## I. Facebook's Petition Will Present Substantial Questions.

Facebook's petition for a writ of certiorari will present substantial questions because the panel's decision splits from other circuits on at least two important issues of securities law. *See* Sup. Ct. R. 10(a) (including as a "compelling reason[]" for granting certiorari that "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter").

*First*, Facebook's petition will present the substantial question of whether this Court erred in expanding the requirements for what must be included in companies' "risk-disclosure" statements. The majority and dissenting opinions diverged on this issue, and the decision intensifies a circuit split. In *Alphabet*, this Court held that "[r]isk disclosures that 'speak entirely of as-yet-unrealized risks and contingencies'

7

and do not 'alert the reader that some of these risks may already have come to fruition' can mislead reasonable investors." 1 F.4th at 703 (brackets omitted). As the *Alphabet* court acknowledged, that holding split this Court from the Sixth Circuit, which has "held that a statement disclosing future harms generally would not mislead a reasonable investor about the current state of a corporation's operations." *Id.* at 704 n.6 (citing *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 490–91 (6th Cir. 2015)).

Over a dissent, the panel's decision extends *Alphabet* even further. The majority read *Alphabet* to mean that whenever a company warns of a risk of harm to its business if some event occurs, the company must also disclose every past instance of that event—even if it occurred long ago and was publicly reported, and even if the company does not know of any present risk of harm to the business. Am. Op. 23–24. In doing so, the majority widened the divide between this Court and the Sixth Circuit.

Judge Bumatay's reading of *Alphabet*, by contrast, would find such a statement false only if business harm has materialized or the company has reason to suspect it will. Am. Op. 47. That view is consistent with the approach in other circuits. *See, e.g.*, *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1256–57 (10th Cir. 2022); *Karth v. Keryx Biopharmaceuticals, Inc.*, 6 F.4th 123, 137–38 (1st

8

Cir. 2021); *Williams v. Globus Med., Inc.*, 869 F.3d 235, 242 (3d Cir. 2017); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 247 (5th Cir. 2009).

In addition to exacerbating a circuit split, this issue raises a substantial question because the majority's analysis imposes onerous disclosure requirements that are unworkable in practice and unlikely to yield any benefit for investors. A company disclosing risk factors may now be required to "disclose every bad thing that ever happened to it," Am. Op. 45–46 (dissent), without any temporal limits and regardless of whether the company has reason to suspect the issue is material to investors. Further, the avalanche of information companies will be required to include in their disclosures will be fertile ground for plaintiffs to "plead[] 'fraud by hindsight,'" contrary to Congress's aim in enacting the PSLRA. *In re Daou Sys., Inc., Sec. Litig.*, 411 F.3d 1006, 1021 (9th Cir. 2005). This important and recurring issue presents a substantial question, and Supreme Court review is warranted to resolve the deepened split.

*Second*, the panel's decision adds confusion to an inter-circuit conflict concerning the pleading standard for loss causation. Although this Court has long aligned itself with the Fourth Circuit by holding in *Oregon Public Employees Retirement Fund v. Apollo Group Inc.* that "Rule 9(b) applies to all elements of a securities fraud action, including loss causation," 774 F.3d 598, 605 (9th Cir. 2014), the panel's original opinion agreed with the Fifth Circuit that plaintiffs need only

9

satisfy the "short and plain statement" requirement of Rule 8. Oct. 18, 2023 Op. 33; *see Lormand*, 565 F.3d at 258. Following Facebook's rehearing petition, the panel amended its decision and replaced references to Rule 8 with the Rule 9(b) pleading standard—but then made no material changes to its previous analysis under Rule 8. *See, e.g.*, Am. Op. at 32–33, 37–38.

That change, however, does not obviate the need for Supreme Court review for at least two reasons. First, while the panel's amended opinion nominally applies Rule 9(b), in practice the decision aligns with the Fifth Circuit's more lenient approach under Rule 8, exacerbating the split on the pleading standard for loss causation. Second, the panel's endorsement of plaintiffs' novel loss-causation theory is itself certworthy. The panel's analysis enables plaintiffs to claim losses from *two* stock drops, four months apart, supposedly caused by the *same disclosures* because investors failed "to appreciate the significance of the Cambridge Analytica . . . scandal[]" for Facebook's "revenue and earnings" until Facebook published its second-quarter earnings in July. Am. Op. 37–38 (cleaned up). *But see In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) (explaining that plaintiffs cannot "prove loss causation by showing that the market reacted to the purported 'impact' of the alleged fraud—the earnings miss—rather than to the fraudulent acts themselves"). That novel theory is fundamentally at odds with *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), whose fraud-on-the-market theory presumes that

10

efficient markets incorporate all public information into the stock price. Given the circuit split over the proper pleading standard for loss causation and this Court's embrace of plaintiffs' novel theory even while purporting to apply Rule 9(b), Supreme Court review is necessary to clarify the standard for pleading loss causation.

Both of these issues present substantial questions on important and recurring areas of securities law that have split the courts of appeals. Pursuing Supreme Court review on these important issues is neither frivolous nor for delay. 9th Cir. R. 41-1.

## II. There Is Good Cause to Stay Issuance of the Mandate.

There is also "good cause for a stay" here. Fed. R. App. P. 41(d)(1). Absent a stay, this case will be remanded to the district court for further proceedings while the Supreme Court considers whether to grant Facebook's petition for a writ of certiorari. Staying the mandate will protect the parties and the district court from expending unnecessary resources, including motion practice and potentially onerous discovery, and from potentially reaching a judgment that will be nullified if the Supreme Court grants review and reverses this Court's judgment. Moreover, both the parties and the district court will benefit from clarity on the applicable legal standards at the outset of the litigation. On the other hand, plaintiffs will not be prejudiced by a temporary stay of this Court's mandate. *See Brown v. Wal-Mart*

*Stores, Inc.*, 2012 WL 5818300, at *4 (N.D. Cal. Nov. 15, 2012) (a "potential delay in Plaintiff's ability to recover penalties" does not weigh against a stay).

## CONCLUSION

The Court should stay issuance of the mandate pending the filing and disposition of a timely petition for a writ of certiorari.

Dated: December 8, 2023  Respectfully submitted,

|  | s/ *Brian M. Lutz* |
|---|---|
| Brian M. Lutz | Joshua S. Lipshutz |
| Michael Kahn | Katherine Moran Meeks |
| GIBSON, DUNN & CRUTCHER LLP | Trenton Van Oss |
| 555 Mission Street, Suite 3000 | GIBSON, DUNN & CRUTCHER LLP |
| San Francisco, CA 94105 | 1050 Connecticut Avenue, N.W. |
| (415) 393-8200 | Washington, D.C. 20036 |
| BLutz@gibsondunn.com | (202) 955-8500 |
|  | JLipshutz@gibsondunn.com |

*Attorneys for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that the motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) and 9th Cir. R. 27-1(1) because, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), this document contains 2,588 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced type-face using Times New Roman font in 14 point size.

Dated:  December 8, 2023

s/ *Brian M. Lutz*
Brian M. Lutz

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **Motion to Stay Issuance of the Mandate** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 8, 2023.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

Dated: December 8, 2023

s/ *Brian M. Lutz*
Brian M. Lutz
